**AFFIDAVIT**

**STATE OF WEST VIRGINIA**

**COUNTY OF CABELL, to-wit:**

I, Sean McNees, being first duly sworn, do hereby depose and state as follows:

## INTRODUCTION

1) I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since January 2016. I am currently assigned to the ATF Louisville Field Division, Charleston, West Virginia Field Office.

2) The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses.

3) Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for this warrant.

## STATUTORY AUTHORITY

4) This affidavit is made in support of a search warrant for 325 Olive Street, Huntington, West Virginia 25705 and appurtenances thereto (hereinafter "the target residence"), which is further described in Attachment A, in which I believe there is probable cause that evidence of violation of Title 21, U.S.C §

1

841(a)(1), distribution of cocaine and fentanyl and possession with intent to distribute cocaine and fentanyl will be located. The information detailed in this affidavit is based upon my investigation into Danielle JONES (hereinafter "JONES"). The events described in this affidavit occurred in Cabell County, West Virginia and within the Southern District of West Virginia.

## AFFIANT'S TRAINING AND EXPERIENCE

5) Your Affiant is currently employed as a Special Agent with the ATF. Your Affiant graduated from the Federal Law Enforcement Training Center, where I learned basic criminal investigation techniques. In addition, I graduated from the ATF National Academy, where I learned about federal firearms laws, federal explosives laws, bomb scene investigations, and arson investigations.

6) Your Affiant has received investigative training, conducted, and participated in investigations of violations of federal criminal laws, including those relating to firearms and controlled substances. These acts commonly involve the criminal use and transfer of firearms, illicit drug trafficking, acts of arson, criminal possession, or use of explosives, and/or destructive devices.

7) In my current position as an ATF Special Agent assigned to the Charleston, West Virginia Field Office, my primary responsibilities include investigating individuals or groups who

have committed violations of the federal firearms and narcotics laws. Within that role, my job duties include, but are not limited to:

    a. Functions as a case agent, which entails the supervision of specific investigations.

    b. Interviewing witnesses relative to the illegal trafficking of drugs and firearms and the distribution of monies and assets derived from these illegal acts.

    c. Functioning as a surveillance agent observing and recording movements of persons trafficking in drugs and firearms and those suspected of trafficking in drugs and firearms.

    d. Drafting, obtaining, and executing search warrants.

**PROBABLE CAUSE**

8) In August of 2023, investigators with the ATF and Huntington Police Department received information from a confidential informant (hereinafter "CI"), who has provided corroborated information regarding drug trafficking in this district, that JONES was supplying narcotics, including cocaine and fentanyl to individuals in the Huntington, West Virginia, area and had been doing so for multiple years. The CI identified the target residence as the location that JONES resides at and where she frequently distributes narcotics from.

9) On August 16, 2023, investigators utilized the CI to

3

conduct a controlled purchase of a quantity of suspected fentanyl and suspected cocaine from JONES inside of the target residence. Prerecorded official law enforcement funds were used to conduct the controlled purchase. During a debrief of the CI, the CI stated JONES was the person with whom he/she conducted the purchase. The controlled purchase was audio and video recorded. The CI subsequently provided the substances to investigators and the substances field tested positive for the presence of fentanyl and cocaine, both Schedule II controlled substances. Your affiant also watched the controlled purchase video and was able to identify JONES in the video from her driver's license photo and surveillance.

10) On August 22, 2023, investigators utilized the CI to conduct a controlled purchase of a quantity of suspected fentanyl from JONES inside the target residence. Prerecorded official law enforcement funds were used to conduct the controlled purchase. During a debrief of the CI, the CI stated JONES was the person with whom he/she conducted the purchase. The CI subsequently provided the substance to investigators and the substance field tested positive for the presence of fentanyl. Your affiant also watched the controlled purchase video and was able to identify JONES in the video.

11) On September 1, 2023, investigators utilized the CI to conduct a controlled purchase of a quantity of suspected fentanyl

from JONES at the target residence. During this occasion the CI went to the target residence and waited on the front porch for JONES to arrive. After several minutes JONES then arrived in a white in color Chevy Impala, which was registered to JONES with the target residence listed as her address. The CI then provided JONES with prerecorded official law enforcement funds and JONES then left the area in her vehicle. After several minutes, JONES returned to the target residence, and the CI then entered the target residence with JONES. While inside the target residence, the CI received a plastic baggie from JONES that contained a quantity of suspected fentanyl. During a debrief of the CI, the CI stated JONES was the person with whom he/she conducted the purchase. The CI subsequently provided the substance to investigators and the substance field tested positive for the presence of fentanyl. The controlled purchase was audio and video recorded. Your affiant also watched the controlled purchase video and was able to identify JONES in the video.

12) On December 27, 2023, investigators utilized the CI to conduct a controlled purchase of a quantity of suspected fentanyl and cocaine from JONES at the target residence. During this occasion the CI went to the target residence and met with JONES inside the residence. The CI then provided JONES with prerecorded official law enforcement funds and received a quantity of suspected cocaine from her. The CI also inquired with JONES if she had any

heroin/fentanyl for sale. JONES advised that she could obtain it for the CI from a location close by. JONES then left the target residence and returned several minutes later. JONES then gave the CI a plastic baggie that contained a quantity of suspected fentanyl. During a debrief of the CI, the CI stated JONES was the person with whom he/she conducted the purchase. The CI subsequently provided the substance to investigators and the substances field tested positive for the presence of cocaine and fentanyl. The controlled purchase was audio and video recorded. Your affiant also watched the controlled purchase video and was able to identify JONES in the video.

13) This affidavit is intended to show that there is probable cause for the requested search warrant and does not purport to set forth all my knowledge of, or investigation, into this matter.

22) I am seeking authorization to search the target residence, which I believe to be currently involved in the trafficking of narcotics.

23) Based on my training, experience, and conversations with other law enforcement officers, I know that that narcotics traffickers will typically come from or return to a location where they keep their supply of narcotics and proceeds from the sale of the narcotics, before or after meeting with a confidential informant. I am also aware that drug traffickers generally store their narcotics and drug-related paraphernalia in their

residences, vehicles, or places of safe haven for extended periods of time. Further, drug traffickers generally maintain records relating to their drug trafficking activities in their residences or the curtilage of their residences. Because drug traffickers often "front" (that is, sell on consignment) controlled substance to their customers, or alternatively, will be "fronted" controlled substances from their suppliers, such record keeping becomes necessary to keep track of amounts paid and owed, and drug traffickers typically maintain these records close at hand to readily ascertain current balances. Often, drug traffickers keep "pay and owe" records to show balances due for drug payments in the past ("pay") and for payments expected ("owe") to and from the trafficker's supplier and the trafficker's dealers. Additionally, drug traffickers typically maintain telephone and address listings of customers and suppliers and keep them immediately available so that they can efficiently conduct their drug trafficking business.

24) It is also a common practice for traffickers to conceal large sums of money, either the proceeds from drug sales or monies to be used to purchase controlled substances, at their residences. In this connection, drug traffickers typically use wire transfers, cashier's checks, and money orders to pay for controlled substances. Drug traffickers also typically maintain evidence of such financial transactions and records relating to income and

expenditure of money at their residences or the curtilage of their residence or vehicles.

25) Typically, drug traffickers possess firearms and other dangerous weapons at their residences or vehicles to protect their profits, supply of drugs, and themselves from others who might attempt to forcibly take the trafficker's profits or supply of drugs.

26) I know that computer hardware, software and electronic files may be important to a criminal investigation because the objects themselves may be contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data. Rule 41 of the Federal Rules of Criminal Procedure permits the government to search for and seize computer hardware, software and electronic files that are evidence of crime, contraband, instrumentalities of crime, and or fruits of crime. In this case, the warrant application requests permission to search and seize records and documents relating to the trafficking of the substances identified in this investigation. These records constitute evidence of crime. This affidavit also requests permission to seize the computer and cellphone hardware that may contain these records if it becomes necessary for reasons of practicality to remove the hardware or cellphones and conduct a search offsite. I believe that, in this case, the computer hardware or cellphones are a container for

evidence and also an instrumentality of the crimes under investigation.

27) I know that cellular telephones are important to a criminal drug investigation because cellular telephones may be evidence or instrumentalities of crime, and/or may be used as storage devices that contain evidence of crimes in the form of electronic data. In this case, the warrant application requests permission to search and seize records relating to the trafficking of the substances identified in this investigation. These records constitute evidence of crime. I also request permission to seize the cellular telephones that may contain these records and search the memory of the cellular telephones. I believe that, in this case, cellular telephones (including saved voice mails, data files, photo and video files, and text messages) are a container for evidence and instrumentalities of the crimes under investigation.

28) My awareness of these drug trafficking practices, as well as my knowledge of drug use and distribution techniques as set forth in this Affidavit, arises from the following: my involvement in prior drug investigations and searches during my career as a law enforcement officer, as previously described; my involvement on a number of accessions in debriefing confidential informants and cooperating individuals in prior drug investigations, as well as what other agents have advised me when relating the substance

of their similar debriefings and the results of their own drug investigations; and other intelligence information provided through law enforcement channels.

29) In a number of residential searches and vehicle searches in prior investigations that I have been involved in, the types of evidence identified in Attachment "B" have typically been recovered from the main residence and from other structures and vehicles in areas on the properties being searched, for example, other storage lockers/areas, detached closets, containers, and yard areas associated with the main residence and used in connection with or within the curtilage of said residence (including vehicles that are maintained and stored on the curtilage of a main residence).

30) Further, your affiant sayeth naught.

_____
Sean McNees, Special Agent
ATF

SUBSCRIBED AND SWORN before me by telephonic means, this 29th day of December 2023.

_____
CHERYL A. EIFERT
UNITED STATES MAGISTRATE JUDGE

10